UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RALPH CLAUDOMIR,              * | |
|                               * | |
|     Plaintiff,     * | |
|                               * | |
| v.                            * | |
|                               * | |
| COMMONWEALTH OF               * | Civil Action No. 15-cv-12867-IT |
| MASSACHUSETTS,                * | |
| MASSACHUSETTS ENVIRONMENTAL   * | |
| POLICE, AARON GROSS, and      * | |
| ROBERT WONG,                  * | |
|                               * | |
|     Defendants.    * | |

MEMORANDUM & ORDER

February 8, 2016

TALWANI, D.J.

    Plaintiff Ralph Claudomir ("Claudomir"), a former employee of Defendant Massachusetts Environmental Police ("MEP"), brings this action alleging disability discrimination by MEP, MEP Executive Director Defendant Aaron Gross and MEP Deputy Director of Finance Defendant Robert Wong. Defendants have moved to dismiss several of the nine causes of action in Claudomir's First Amended Complaint [#19] based on Eleventh Amendment sovereign immunity and other grounds. For the following reasons, Defendants' Motion to Dismiss Claims Against Defendants Massachusetts Environmental Police, Aaron Gross and Robert Wong [#22] is ALLOWED IN PART and DENIED IN PART.

    I.      Legal Standard

    In ruling on a motion to dismiss, whether for lack of jurisdiction or for failure to state a claim, the court must accept the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. See Trans-Spec Truck Serv., Inc. v. Caterpillar,

Inc., 524 F.3d 315, 321 (1st Cir. 2008) (Rule 12(b)(6)); Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (12(b)(1)).  A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

II.     Facts as Alleged in the Amended Complaint

Claudomir has been hearing impaired since birth, is deaf in his left ear, and suffers from 35% hearing loss in his right ear.  Id. ¶¶ 10-11.  Claudomir's hearing loss manifests in a number of ways including limiting his ability to hear, concentrate, think, communicate, work, interact with others, and control the volume of his voice.  Id. ¶ 12.

On or about April 25, 2011, Claudomir was hired under written contract to work with Massachusetts Environmental Police's ("MEP") Office of Energy and Environmental Affairs as a Registration Bureau Chief, Revenue Account Manager.  Id. ¶ 17.  The Registration Bureau Chief is responsible for, among other things, managing the five registration offices located throughout Massachusetts that handle registration of motorized boats and recreational vehicles. Id. ¶¶ 18, 19.  MEP Executive Director Aaron Gross ("Gross") and MEP Deputy Director of Finance Robert Wong ("Wong") were present at Claudomir's second interview for the position. Id. ¶ 15.  Claudomir disclosed his hearing impairment to Gross and Wong at that interview, and further disclosed the impairment to other supervisors and staff once he was hired.  Id. ¶¶ 16, 21.

On or about July 2011, Defendants demoted Claudomir from Registration Bureau Chief to Revenue and Systems Manager and gave a substantial portion of his former job duties to Operations Manager and former Acting Registration Bureau Chief Janice Santos ("Santos").

Id. ¶¶ 21, 24.  Specifically, Santos became responsible for communicating with and managing staff at the five registration offices, and only the Boston Registration Office staff continued to report to Claudomir.  Id. ¶ 24.

Claudomir alleges that throughout 2011 and 2012, Gross and Wong treated him differently than Santos and other colleagues, including by Wong unnecessarily micromanaging Claudomir, and by Gross, Wong, and others routinely excluding Claudomir from senior management meetings.  Id. ¶ 25.  In addition, Gross and Wong badgered Claudomir about the volume of his voice, making "cruel" remarks such as "I can't understand you," "you are too loud all the time," and "I know you hear me."  Id. ¶ 26.

Around May or June 2013, Claudomir complained to Assistant Secretary of Human Resources Barbara Nobles-Crawford ("Nobles-Crawford") about his disparate treatment, hostile work environment, and being demoted without justification, and requested a reasonable accommodation for his hearing impairment.  Id. ¶ 28.  Human Resources then investigated Claudomir's complaints, leading to a meeting between Claudomir, Nobles-Crawford, Wong, and MEP Deputy Director Christian Baker.  Id. ¶¶ 28, 29.  At that meeting, the parties agreed to (1) transition Claudomir back to the Registration Bureau Chief position; (2) include Claudomir in all meetings and discussions pertinent to him; and (3) involve Claudomir in all matters related to the Registration Bureau.  Id. ¶ 29.  Around June 18, 2013, Claudomir submitted a formal request for an accommodation for his hearing impairment, which was supported by medical documents submitted June 24, 2013.  Id. ¶¶ 30, 31.

Around July 9, 2013, MEP Technology Specialist Jonathan O'Dell conducted an evaluation of Claudomir's workspace with the Massachusetts Commission for the Deaf and Hard of Hearing.  Id. ¶ 32.  Around July 19, 2013, O'Dell issued a memo describing four reasonable

accommodations to be made for Claudomir, including: (1) an office with floor to ceiling walls; (2) use of a high quality ancillary headset to block out ambient noise and to enable Claudomir to adjust the volume of his telephone without use of the speakerphone; (3) use of an "FM system" with headphones and a remote microphone for meetings and trainings with two or three participants; and (4) use of an "FM system" or Communication Access Real-Time Translation system for employment related meetings, hearings, evaluations or interviews. Id. ¶ 33. Defendants did not provide Claudomir with any of these four accommodations in a timely manner. Id. ¶ 34. Defendants ultimately provided Claudomir with a headset to block ambient noise around September 2013. Id. ¶ 38. However, Claudomir told Crawford-Nobles and Wong that it did not meet his needs, and Claudomir could not use the headset until about December 12, 2013. Id.

Before the headset was provided, in summer 2013, Wong and Santos humiliated and harassed Claudomir by repeatedly yelling at him during meetings. Id. ¶ 37. Claudomir reported this increased hostility to Nobles-Crawford in August 2013. Id. Claudomir, Nobles-Crawford, Wong, and Gross met to address Claudomir's complaints and the parties affirmed their commitment to the agreement reached during the June 2013 meeting. Id.

On October 22, 2013, MEP Director of Diversity Michelle Waters-Ekanem ("Waters-Ekanem") contacted Claudomir regarding an investigation into various issues in Claudomir's department. Id. ¶¶ 39, 40. Claudomir told Waters-Ekanmen about the complaints he had raised to Crawford-Nobles in the preceding months. Id. ¶ 40. On December 10, 2013, Waters-Ekanem issued a report finding: (1) Claudomir was never allowed to fulfill his hired position as Registration Bureau Chief; (2) Wong did not properly transition Claudomir into his job as Bureau Chief when he was first hired and following his demotion; (3) Wong's micro-

management of Claudomir and inappropriate disclosure of private information about Claudomir to management and staff aided in undermining Claudomir's authority and role in the department; and (4) the perception that Claudomir yells when he speaks is attributable to his hearing impairment. Id. ¶ 41. Additionally, Waters-Ekanmen recommended that Claudomir be returned to his hired position as Registration Bureau Chief. Id. ¶ 42. Waters-Ekanem's findings and recommendations were forwarded to Gross and Nobles-Crawford on December 10, 2013, and Wong and others were also informed of the findings. Id.

Around December 19, 2013, Defendants issued a warning to Claudomir for attempting to speak with Gross during his lunch break and speaking too loudly. Id. ¶ 43. On January 2, 2014, Defendants issued a second warning to Claudomir for his allegedly disruptive and disrespectful behavior, including speaking with a loud voice, in a meeting with Wong on December 4, 2013. Id. ¶ 44. On January 6, 2014, Defendants issued a final written warning notifying Claudomir that he would be terminated if he did not resign. Id. ¶ 45. On January 29, 2014, Claudomir informed Wong and Baker that he would not resign and that he wanted to keep his job. Id. ¶ 46. On January 30, 2014, Defendants terminated Claudomir. Id. ¶ 47.

III.   Discussion

Claudomir's First Amended Complaint asserts nine causes against MEP and Gross and Wong in their individual and official capacities unless otherwise noted: Count I Violation of 42 U.S.C. § 1983; Count II Violation of Title II of the Americans with Disabilities Act ("ADA"); Count III Discrimination Based on Disability in violation of Mass. Gen. Laws ch. 151B; Count IV Wrongful Termination (Breach of Contract); Count V Wrongful Termination (Violation of Public Policy); Count VI Intentional Infliction of Emotional Distress; Count VII Negligent Infliction of Emotional Distress; Count VIII Violation of § 504 of the Rehabilitation Act (29

U.S.C. § 701 *et seq.*) (as to MEP and Gross and Wong in their official capacities only); and Count IX Violation of Due Process.

Defendants move to dismiss Counts I, III, IV, V, VI, VII and IX against MEP and Wong and Gross in their official capacities based on Eleventh Amendment sovereign immunity. Defendants further move to dismiss Counts II, IV, V, VI, VII and IX as alleged against Gross and Wong in their individual capacities.

### A. Eleventh Amendment Immunity

The Eleventh Amendment prohibits suit "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. States, "arms of the state," and state officials sued in their official capacity enjoy Eleventh Amendment immunity. See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (citing In re San Juan Dupont Plaza Hotel Fire Litig., 888 F.2d 940, 942 (1st Cir. 1989)); Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989) (because suit against a state official "is not a suit against the official but rather is a suit against the official's office . . . it is no different from a suit against the State itself."); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 107 (1984) ("[T]he general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought.").

Eleventh Amendment immunity is not, however, absolute. A state (or state official) is not immune from suit in a federal forum if the state has consented to suit there or otherwise waived its immunity, or if Congress has clearly abrogated the immunity through a valid exercise of power. See Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth., 991 F.2d 935, 939 (1st Cir. 1993). In addition, state officials are not immune from suits that seek prospective injunctive relief based on violations of federal law. See Pennhurst, 465 U.S. at 102.

Here, the Massachusetts Environment Police is an arm of the state because judgment against the MEP would effectively be judgment against the state, and Gross and Wong are state officials sued in their official capacity.

As to Claudomir's state law causes of action, the Commonwealth has not consented to suit or otherwise waived its sovereign immunity for any of those claims in federal court. See Lynch v. Mass. State Senate, 495 F. Supp. 2d 175, 179 (D. Mass. 2007) ("[Eleventh Amendment immunity] may be lifted if the relevant state law contains a provision specifically authorizing suit against the state to proceed in federal court. [Mass. Gen. Laws ch. 151B] does not contain such a provision."); Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (MTCA contains no waiver of immunity for tort suits against the Commonwealth brought in federal court) (citing Irwin v. Comm'r of Dep't of Youth Servs., 448 N.E.2d 721, 727 (Mass. 1983)); J.A. Sullivan Corp. v. Commonwealth, 494 N.E.2d 374, 377 (Mass. 1986) (describing Chapter 258's waiver of sovereign immunity for contract claims in state court only). Accordingly, MEP and Gross and Wong in their official capacities are immune from Claudomir's state law claims (Counts III, IV, V, VI, VII) and those counts are dismissed as to those Defendants.

The Commonwealth also seeks to dismiss two of the federal causes of action on sovereign immunity grounds (Counts I and IX). Both are actions under 42 U.S.C. § 1983.[1] Congress has not abrogated the state's sovereign immunity for § 1983 actions. See Quern v. Jordan, 440 U.S. 332, 342 (1979). And though the parties agree that the Commonwealth has waived its sovereign immunity for claims brought under the Rehabilitation Act (Count VIII) by accepting federal funds, that waiver does not clearly extend to causes of action under § 1983, as

---

[1] Count IX is titled "Violation Due Process." The court understands this to be a cause of action for violation of procedural due process under § 1983. Claudomir has not disputed this construction.

Claudomir suggests.

However, because Claudomir seeks prospective injunctive relief, First. Am. Compl., Prayer for Relief ¶¶ e-h, his federal law causes of action against Gross and Wong in their official capacities are not entirely barred by the Eleventh Amendment. Accordingly, Counts I and IX are dismissed as to MEP, but not as to Gross and Wong in their official capacities to the extent they seek injunctive relief.[2]

For the foregoing reasons, Counts III, IV, V, VI, VII are dismissed as to MEP and Gross and Wong in their official capacities and counts I and IX are dismissed as to MEP.

### B. Causes of Action Against Gross and Wong in their Individual Capacities

#### 1. Count II (Violation of Title II of the ADA)

Defendants move to dismiss Count II (titled "Violation of Title II [ADA]") against Gross and Wong in their individual capacities, asserting that there is no individual liability under the ADA. Though the First Circuit has yet to address whether there can be individual liability under Title II, several courts have concluded that there is no such individual liability, reasoning that the statute prohibits discrimination by a "public entity" and not an "individual" or "person." See, e.g., Walker v. Snyder, 213 F.3d 344, 347 (7th Cir. 2000) (abrogated on other grounds by Bd. of Trs. of Univ. Ala v. Garrett, 531 U.S. 356, 374 n.9 (2001); Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 1999); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 2009) (en banc). The First Circuit noted this emerging consensus in Kiman v. N.H. Dep't Corr., 451 F.3d 274, 290 (1st Cir. 2006). However, while titled "Violation of Title II [ADA]," Count II also alleges that Claudomir was retaliated against in violation of the ADA's anti-retaliation provisions

---

[2] Nevertheless, as set forth below, the court concludes that Count IX fails to state a claim and is dismissed as to all defendants notwithstanding the limits of sovereign immunity.

set forth in Title IV of that statute.  See First Am. Compl. at 11 ¶ 19 ("Defendants retaliated against Plaintiff . . . in violation of 42 U.S.C. § 12203 *et seq*.").  42 U.S.C. § 12203(a) provides that:

> [n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a) (emphasis added).  Several courts have concluded § 12203's use of the term "person" rather than "entity" or "employer" permits individual liability for retaliation under the ADA.  See Shotz v. City of Plantation, 344 F.3d 1161, 1168 (11th Cir. 2003); Datto v. Harrison, 664 F. Supp. 2d 472, 491 (E.D. Pa. 2009) (collecting cases).  Other courts have reached the opposite conclusion, see Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010), Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999), and the First Circuit has not yet reached this issue.

Thus, it remains an open question as to whether Gross and Wong can be liable for ADA retaliation in their individual capacities.  The court declines to resolve that question at this time, because regardless of the outcome, Claudomir's ADA cause of action is proceeding against Gross and Wong in their official capacities and MEP.  Accordingly, Defendants' motion to dismiss Count II as to Gross and Wong in their individual capacities for failure to state a claim is denied.

> 2. Count IV (Wrongful Termination (Breach of Contract)) and Count V (Wrongful Termination (Public Policy Violation))

Gross and Wong in their individual capacities also move to dismiss Counts IV and V as barred by Mass. Gen. Laws ch. 151B's "exclusivity provision."  Mass. Gen. Laws ch. 151B, § 9 provides that "as to acts declared unlawful by section 4, the administrative procedure provided in

9

this chapter under section 5 shall, while pending, be exclusive; and the final determination on the merits shall exclude any other civil action, based on the same grievance of the individual concerned." Courts have construed this provision to bar a plaintiff's common law claims insofar as they "merely recast" versions of his or her discrimination claims under Chapter 151B. See Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996); see also Charland v. Muzi Motors, 631 N.E.2d 555, 559 (Mass. 1994) ("where applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections").

Claudomir argues that neither of his causes of action are encompassed by the exclusivity provision. Claudomir principally relies on the Massachusetts Supreme Judicial Court's decision in Comey v. Hill, 438 N.E.2d 811, 817 (Mass. 1982), in which the court stated that it "do[es] not view the statute as tending to narrow or eliminate a person's common law rights where applicable." See also Green, 664 N.E.2d at 811 (citing Comey for the proposition that "claimants may bring common law claims against employers which are grounded in tort and contract principles established prior to adoption of c. 151B").

As to Claudomir's wrongful termination in violation of public policy cause of action (Count V), Claudomir's reliance on Comey is misplaced and that cause of action does fall within the scope of Chapter 151B's exclusivity provision. Specifically, the cause of action asserts that Defendants terminated Claudomir for "asserting legally guaranteed rights." First Am. Compl. at 13 ¶ 40. The "legally guaranteed rights" that Claudomir asserted—the right to be free from disability discrimination—exists only because of Chapter 151B, as does his right to assert that right freely. See Mass. Gen. Laws ch. 151B, § 4(16) (prohibiting discrimination in employment on the basis of disability); § (4A) (making it unlawful to "interfere with another person in the

10

exercise or enjoyment of any right granted or protected by this chapter"). In other words, no common law principles existed prior to the enactment of §§ 4(4A) or 4(16) that would have afforded Claudomir a remedy, so Comey does not apply. Cf. Melley v. Gillette Corp., 475 N.E.2d 1227, 1229 (Mass. App. Ct. 1985) (Comey does not apply to claim of age discrimination in employment because no common law remedy for age discrimination existed before such conduct was barred by Chapter 151B). Accordingly, because Claudomir's public policy cause of action essentially "recasts" his Chapter 151B cause of action, it is barred.

As to Claudomir's breach of contract cause of action (Count IV), the court doubts whether that cause of action would be barred by Chapter 151B's exclusivity provision to the extent it alleges violation of rights afforded to him by contract rather than rights created by Chapter 151B. See Galletly v. Coventry Healthcare, Inc., 956 F. Supp. 2d 310, 315 (D. Mass. 2013) (finding breach of contract claim not barred by exclusivity provision "because the breach of contract claim rests on defendant's failure to fulfill its additional obligation to provide initial discipline to plaintiff before termination, rather than its statutory obligation to comply with state law at the time of termination"). But even if not barred by the exclusivity provision, Claudomir's breach of contract claim fails to state a claim as to Gross and Wong because he does not allege any contractual relationship with either of them. Indeed, the only mention of any contract is the employment contract between Claudomir and MEP. See First Am. Compl. at 4-5 ¶ 17 ("On or about April 25, 2011, [MEP] . . . hired Plaintiff under a written contract . . . ."). Accordingly, because Claudomir alleges no contract with Gross or Wong, Count IV fails to state a claim as to those defendants.

### 3. Count VI (Intentional Infliction of Emotional Distress) and Count VII (Negligent Infliction of Emotional Distress)

Defendants further move to dismiss Counts VI and VII against Gross and Wong in their

individual capacities for failure to satisfy the presentment requirement of the Massachusetts Tort Claims Act ("MTCA") and additionally as to Count VII, because a public employee acting within the scope of his employment cannot be liable for negligence. First, as to the negligence argument, the MTCA provides that

> [p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.

Mass. Gen. Laws ch. 258, § 2. This provision "authorizes certain negligence actions against public employers, [and] simultaneously 'shields public employees from personal liability.'" Canales v. Gatzunis, 979 F. Supp. 2d 164, 174 (D. Mass. 2013) (quoting Caisse, 346 F.3d at 218). Accordingly, because Gross and Wong cannot be liable for negligence in their individual capacities, Count VII of the First Amended Complaint for negligent infliction of emotional distress fails to state a claim as to those defendants. See Opalenik v. LaBrie, 945 F. Supp. 2d 168, 196 (D. Mass. 2013) (negligent infliction of emotional distress claim against individual state employee barred by MTCA).

As to the presentment requirement, Mass. Gen. Laws ch. 258, § 4 provides that no civil action can be brought against a public employer for the negligent or wrongful acts of an employee "unless the claimant shall have first presented his claim in writing . . . within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer . . . ." Mass. Gen. Laws ch. 258, § 4. Thus, when a public employer is sued for the negligence or wrongful conduct of its employee, the claim must be properly presented and denied before it can be brought in court. However, Mass. Gen. Laws ch. 258, § 10 further provides that "[t]he provisions of section one to eight, inclusive, shall not apply to . . . (c)

any claim arising out of an intentional tort, including . . . intentional mental distress." Thus, the presentment requirement of § 4 does not to apply to Claudomir's cause of action for intentional infliction of emotional distress caused by Gross and Wong in their individual capacities, nor do the vicarious liability provisions of § 2. Accordingly, Claudomir's alleged failure to satisfy the presentment requirement does not bar his claims for intentional infliction against Gross and Wong in their individual capacities and that cause of action will not be dismissed.

    4.    Count IX (Violation of Due Process)

Count IX asserts that "Defendants violated Plaintiff's due process by failing to investigate his complaint(s) of discrimination," First Am. Compl. ¶ 75. "In order to establish a procedural due process claim under [42 U.S.C. § 1983], a plaintiff must allege first that [he] has a property interest as defined by state law, and second, that the defendants, acting under color of state law, deprived him of that property interest without constitutionally adequate process." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (internal quotation marks and citation omitted). Defendants' motion to dismiss Count IX argues, in part, that the Amended Complaint fails to identify a protected property interest that was deprived. Though Claudomir did not respond to Defendants' arguments in his opposition brief, at oral argument counsel confirmed that the due process cause of action is based on Defendants' failure to properly investigate and accommodate his hearing impairment. Claudomir has not, however, pointed to any authority for the proposition that the he had a protected liberty or property interest in having his complaints investigated or his disability accommodated. Thus, though Defendants' alleged failure to investigate and accommodate Claudomir's alleged disability may be basis for liability under the ADA, it does not state a claim for violation of due process. Accordingly, Count IX is dismissed as to all defendants.

IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Claims Against Defendants Massachusetts Environmental Police, Aaron Gross and Robert Wong [#22] is ALLOWED IN PART and DENIED IN PART.  Counts I, III and VI are dismissed as to MEP; Counts III and VI are dismissed as to Gross and Wong in their official capacities; and Counts IV, V, VII and IX are dismissed as to all defendants.  Pursuant to Rule 12(a)(4)(A), Defendants shall respond to the Amended Complaint no later than 14 days from the date of this order.

IT IS SO ORDERED.

Date: February 8, 2016                                                  /s/ Indira Talwani
                                                                                           United States District Judge